NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>BARCLAYS BANK (SUISEE) S.A.; CAIXBANK. S.A., as successor in Interest to Barclays Bank S.A.; and ZEDRA TRUST COMPANY (JERSEY) LIMITED (f/k/a Barclays Private Bank & Trust Limited)<br><br>　　　　　　　Defendants. | Adv. Pro. No. 11-02569 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street

New York, New York 10019
By: Kim M. Longo

*Counsels for Defendant Barclays Bank (Suisse) S.A.; Caixabank S.A., as successor by merger to Barclays Bank S.A.; and Zedra Trust Company (Jersey) Limited (f/k/a Barclays Private Bank and Trust Limited)*
Herbert Smith Freehills New Yorl LLP
450 Lexington Avenue
New York, New York 10017
By: Marc J. Gottridge

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants' motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. The Defendants seek dismissal for failure to plead a cause of action due to improper adoption by reference, for failure to state a claim due to the safe harbor provision of the Bankruptcy Code, and for failure to adequately plead that it received BLMIS customer property. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.

## BACKGROUND

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.

This adversary proceeding was filed on September 1, 2011. The Trustee's complaint ("Complaint"), as amended on December 15, 2021 and February 14, 2022[1], alleges that Barclays Bank (Suisse) S.A. ("Barclays Suisse"), Caixabank S.A., ("Caixabank") as successor by merger to Barclays Bank S.A., Zedra Trust Company (Jersey), Limited ("Zedra") (f/k/a Barclays Private Bank & Trust Limited) (collectively the "Barclays Defendants") received transfers of approximately $65 million[2] from Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma") between April 2003 and November 2008.

According to the Complaint, Defendant Barclays Suisse is Swiss *société anonyme*. Compl. ¶ 22. Defendant Caixabank is a successor by merger to Barclays Bank S.A., a Spanish

---

[1] The Trustee's Complaint (Compl., ECF No. 1) was amended by stipulations entered on December 16, 2021 (Stip., ECF No. 119) and February 14, 2022 (Stip., ECF No. 122). The 2021 stipulation substituted the latter two Defendants. The February 2022 stipulation dismissed certain transfers with prejudice. References herein to the "Complaint" mean the Complaint as updated by those stipulations, and references to activities of or transfers received by "Defendants" during the relevant time frame shall include defendants as named in the originally filed Complaint.

[2] The original amount alleged totaled $67,386,667. By stipulation, the Trustee agreed to not pursue four transfers made in January and April 2003, totaling approximately $2,733,843. Stip., ECF No. 122.

*sociedad anónima*. *Id.* ¶ 23. Defendant Zedra is formerly known as Barclays Private Bank and Trust Limited, a Jersey registered private company. *Id.* ¶ 24. Each of the Defendants are alleged to have received subsequent transfers of customer property from Fairfield Sentry. *Id.* ¶ 36. Defendants Barclays Suisse and Caixabank are alleged to have received additional subsequent transfers of customer property from Fairfield Sentry through Fairfield Sigma. *Id.*

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion. Compl. ¶ 37. In 2011, the Trustee settled with Fairfield Sentry and others. *Id.* ¶ 42. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate. *Id.* The Trustee then commenced a number of adversary proceedings against subsequent transferees like Defendants to recover the approximately $3 billion in missing customer property.

The Barclays Defendants make a number of arguments concerning the adequacy of the Trustee's complaint and the safe harbor. Defendants argue that: the Trustee has failed to adequately allege actual fraudulent intent under 548(a)(1)(A) and Rule 9(b); the Trustee has failed to sufficiently plead the voidability of the initial transfers from BLMIS under Section 550(a)(2); the Trustee has failed to adequately plead that the Barclays Defendants are subsequent transferees of customer property; the section 546(e) safe harbor bars to the Trustee's recovery of these transfers; and the Trustee has failed to show actual knowledge of the Defendants.

## SUMMARY OF THE LAW:

I.  **12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

## II. Count One: Recovery of Subsequent Transfers

Section 550(a) of the Bankruptcy Code states:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

"Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer, *Sharp Int'l Corp. v. State St. Bank & Trust Co.*, (*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005), and Rule 8(a) governs the portion of a claim to recover the subsequent transfer. *Legacy Capital*, 548 B.R. at 36 (citing cases)." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) ("*BNP Paribas*"). To properly plead Count One, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

a. <u>The Trustee has Adequately Pleaded the Subsequent Transfers</u>

The Barclays Defendants argue that the Trustee's complaint fails to plausibly allege that the Defendants were subsequent transferees of customer property. "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *BNP Paribas*, 594 B.R. at 195; *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y.

Apr. 15, 2013) ("*Cohmad*"). "The plaintiff must allege the necessary vital statistics—the who, when, and how much– of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." 594 B.R. at 195.

The Trustee's complaint in *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286, (the "Fairfield Complaint"), which is incorporated by reference into this Complaint, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. Fairfield Compl. ¶ 89; *see also* Fairfield Compl. ¶ 91 ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property.

The Trustee's complaint alleges specific amounts of funds transferred from BLMIS through Fairfield Sentry and Fairfield Sigma to each of the Defendants. Compl. ¶¶ 43–55. Specifically, the Complaint alleges the following:

1. $4,719,252 from BLMIS to Fairfield Sentry to Barclays Bank S.A., to which the defendant, Caixabank, is successor by merger.[3]

2. $752,273,917 from BLMIS to Fairfield Sentry to Fairfield Sigma, and $16,105,498 of that initial amount to Barclays Bank S.A.[4]

---

[3] "Based on the Trustee's investigation to date, approximately $4,719,252 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Barclays Spain. . . ." Compl. ¶ 43.

[4] "Based on the Trustee's investigation to date, approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma, which in turn transferred the equivalent of approximately $16,105,498 to Defendant Barclays Spain. . . ." Compl. ¶ 45.

3. $37,973,175 from BLMIS to Fairfield Sentry to Barclays Suisse.[5]

4. $752,273,917 from BLMIS to Fairfield Sentry to Fairfield Sigma, and $7,704,754 of that initial amount to Barclays Suisse.[6]

5. $893,988 from BLMIS to Fairfield Sentry to the Defendant, Zedra, then known as Barclays Private Bank.[7]

Exhibits attached to the Complaint demonstrate each subsequent transfer. Exhibit D shows ten transfers made from Fairfield Sentry to Barclays Bank S.A. in the cumulative amount of $4,719,252. Compl. Ex. D. Exhibits E and F show forty transfers from Fairfield Sentry to Fairfield Sigma in the cumulative amount of $752,273,917 and from Fairfield Sigma to Barclays Bank S.A. in the cumulative amount of $16,105,498. Compl. Exs. E, F. Exhibit G shows seventy-four transfers made from Fairfield Sentry to Barclays Suisse in the cumulative amount of $37,973,175. Compl. Ex. G. Exhibits E and H show forty transfers from Fairfield Sentry to Fairfield Sigma in the cumulative amount of $752,273,917 and eleven transfers from Fairfield Sigma to Barclays Suisse in the cumulative amount of $7,704,754. Compl. Exs. E, H. Exhibit I shows two transfers from Fairfield Sentry to Barclays Private Bank in the cumulative amount of $893,988. Compl. Ex. H.

These exhibits provide the information necessary to establish the subsequent transferees of the funds. Defendants take issue with the evidence, arguing that the subsequent transfers from

---

[5] "Based on the Trustee's investigation to date, approximately $37,973,175 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Barclays Suisse. . . ." Compl. ¶ 48.

[6] "Based on the Trustee's investigation to date, approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma, which in turn transferred the equivalent of approximately $7,704,754 to Defendant Barclays Suisse. . . ." Compl. ¶ 50.

[7] "Based on the Trustee's investigation to date, approximately $893,988 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Barclays Private Bank. . . ." Compl. ¶ 53.

Fairfield Sentry could not plausibly have been subsequent transfers of the initial transfers, as the later subsequent transfers took place ten to seventeen months after the initial transfers. The Trustee need not show a transfer to a Defendant immediately preceded by a BLMIS transfer in order to allege that the former was of customer property. The months-long pause between certain individual initial transfers and subsequent transfers do not make the allegations implausible.

The Defendants take issue with the basic math of the Transfers on both the macro and the micro level. The Defendants find it implausible that the $3 billion of funds transferred from BLMIS could have resulted in the approximately $5 billion that the Trustee seeks to recover from all subsequent transferees. Mot. to Dismiss 34–35, ECF No. 130. The Defendants find it implausible that the subsequent transfers to these Defendants could have been funded entirely from the initial transfers, as the transfers alleged here occurred when "the aggregate amount Fairfield Sentry had paid to other redeeming shareholders exceeded what it had by then received from BLMIS." *Id.* at 38. In this way the transfers must have been composed at least in part of other funds.

These arguments assume that all subsequent transfers preceding the ones at issue here were sourced solely from customer property and that Fairfield Sentry had other property to give. These assumptions are unsupported and are issues of fact better resolved at a later stage of this litigation. Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that the Defendants were subsequent transferees of customer property.

    b. <u>The Trustee has Adequately Pleaded the Initial Transfers</u>

In order to properly plead a subsequent transfer claim, the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry are avoidable. The Trustee is not required to

avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. Certainly, the plaintiff can pursue the initial transferee, but the plaintiff is not obligated to do so. The plaintiff is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee has pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239. Compl. ¶ 37 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.").

Adoption by reference is government by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." This Court has already held that adoption of the Fairfield Complaint by reference is permissible in this SIPA case, and the district court has already found that incorporation by reference of the entire Fairfield Complaint is proper. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly incorporated by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint

was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *Perez v. Terrastar Corp.* (*In re Terrestar Corp.*), No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), aff'd, 943 F.3d 125 (2d Cir. 2019)); *In re Terrestar Corp.*, 2017 WL 1040448, at *4 ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Whether the Fairfield Complaint properly pleads the avoidability of the initial transfers, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Trustee alleges in the Second Amended Complaint in adversary proceeding 09-01239 that Fairfield Sentry and related entities received each of the initial transfers with actual knowledge of fraud at BLMIS. Fairfield Compl. ¶¶ 314–33. Through the reference to the Fairfield Complaint, the Trustee has adequately pleaded the avoidability of the initial transfer.

**III.    The Safe Harbor Does Not Bar the Avoidance of the Fairfield Initial Transfers**

Defendants have raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *BNP Paribas*, 594 B.R. at 197 (emphasis added). However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted." *Cohmad*, 2013 WL 1609154, at *4. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *rev'd on other grounds*, *Picard v.*

*Citibank, N.A.* (*In re BLMIS*) 12 F.4th 171 (2d Cir. 2021). "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Fairfield Inv. Fund*, 2021 WL 3477479, at *4.

This Court has already determined that the Fairfield complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a 12(b)(6) motion. *See Id.* ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the 'SSC

Strategy'). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud. They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

This Court determined in *Picard v. Fairfield Inv. Fund,* 2021 WL 3477479, that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry and others had actual knowledge of that BLMIS was not trading securities. 2021 WL 3477479, at *3–7. The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied. *Cohmad*, 2013 WL 1609154, at *10. And "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract" this Court was directed to "adjudicate those claims in the first instance consistent with [the district court's] opinion." This case was included as one of the consolidated cases on which the district court has already ruled. *See* Order, 12-MC-115, ECF No. 119, Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**IV.  The Safe Harbor Cannot be Applied to a Subsequent Transfer**

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *BNP Paribas*, 594 B.R. 197 (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer; "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550*.*" *BNP Paribas*, 594 B.R. at 197.

The Defendants' reliance on *Cohmad*, 2013 WL 1609154, is unavailing. In *Cohmad*, Judge Rakoff laid out the general rule and the "one caveat" to it. The general rule is where the court looks to the actual knowledge of the initial transferee. To recover a fraudulent transfer, the

Trustee must show "the initial transfer of . . . by the debtor is subject to avoidance under one of the Bankruptcy Code's avoidance provisions." *Cohmad* at *7. The one caveat to this rule arises when the initial transferee had no actual knowledge of the fraud, but the Trustee can show that the subsequent transferee with did. *Id.* In this situation, "that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id.* This caveat only pertains to a subsequent transferee with actual knowledge. It is the "one caveat." *Id. Cohmad* did not "leave open" any additional caveats for subsequent transferees who lack actual knowledge.

Defendants are not permitted to raise the safe harbor defense on their own behalf as subsequent transferees.

## Conclusion

For the foregoing reasons, the Barclays Defendants' motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: July 15, 2022
Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris
U.S. Bankruptcy Judge**